### IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

**TIM BORGSTROM,**
     **Plaintiff,**

**v.**                                 **Case No: 3:09cv510/LAC/MD**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**
     **Defendant.**

_____

### REPORT AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Borgstrom's application for a period of disability and disability insurance benefits under Title II of the Act.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

### PROCEDURAL HISTORY

Mr. Borgstrom filed an application for benefits claiming an onset of disability as of October 2, 2006.  The application was denied initially and on reconsideration,

and Mr. Borgstrom requested a hearing before an administrative law judge (ALJ). A hearing was held on May 7, 2009 at which Mr. Borgstrom was represented by counsel and testified. A vocational expert also testified. The ALJ entered an unfavorable decision (tr. 15-31) and Mr. Borgstrom requested review by the Appeals Council without submitting additional evidence. The Appeals Council declined review (tr. 4-6). The Commissioner has therefore made a final decision, and the matter is subject to review in this court. *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1262 (11th Cir. 2007); *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998). This timely appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that Mr. Borgstrom last met the insured status requirements of the Social Security Act on December 31, 2006; that he did not engage in any substantial gainful activity from his October 2, 2006 onset of disability through his date last insured, December 31, 2006; that through the date last insured he had severe impairments of (1) coronary artery disease, (2) cervical stenosis, (3) post traumatic stress disorder (PTSD), (4) anxiety disorder, and (5) depression, but that he did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; that he had the residual functional capacity to perform less than the full range of light work such that he could lift 20 pounds occasionally and ten pounds frequently, stand and/or walk for six hours in an eight hour workday, sit for six hours in an eight hour workday with normal breaks, but was restricted from climbing, balancing, carrying or lifting overhead, and similar use of his hands and arms; that he was unable to perform his past relevant work as a land developer, marketing worker or bank worker because of either exertional or mental demands; that he was 52 years old with a high school education; that transferability of job skills was not material; that through the date last insured there were jobs that

existed in significant numbers in the national economy that he could have performed such as information clerk, ticket taker and security guard; and, that he was not under a disability as defined in the Act at any time from October 2, 2006 through December 31, 2006 (tr. 15-31).

## STANDARD OF REVIEW

In Social Security appeals, this court must review de novo the legal principles upon which the Commissioner's decision is based. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)). There is no presumption that the Commissioner followed the appropriate legal standards in deciding a claim for benefits, or that the legal conclusions reached were valid. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996); *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002). Failure to either apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

The court must also determine whether the ALJ's decision is supported by substantial evidence. *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)). Even if the proof preponderates against the Commissioner's decision, if supported by substantial evidence, it must be affirmed. *Ingram*, 496 F.3d at 1260; *Miles*, 84 F.3d at 1400. Substantial evidence is more than a scintilla but less than a preponderance, and encompasses such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Moore*, 405 F.3d at 1211 (citation omitted). In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Secretary's decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the

evidence.  ***Moore***, **405 F.3d at 1211 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  Findings of fact of the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Ingram*, 496 F.3d at 1260.**

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The social security regulations establish a five-step evaluation process to analyze claims for both SSI and disability insurance benefits.  *See Moore,* 405 F.3d at 1211;  20 C.F.R. § 416.920 (2009) (five-step determination for SSI); 20 C.F.R. § 404.1520 (2009) (five-step determination for DIB).  A finding of disability or no disability at any step renders further evaluation unnecessary.  See 20 C.F.R. § 416.920;  20 C.F.R. § 404.1520.  The steps are:

1.    Is the individual currently engaged in substantial gainful activity?

2.    Does the individual have any severe physical or mental impairment that meets the duration requirement?

3.    Does the individual have any severe impairments that meet or equal those listed in Appendix 1 to subpart P of 20 C.F.R. Part 404 and meet the duration requirement?

4.    Considering the individual's residual functional capacity, can the individual perform past relevant work?

5.    Can the individual perform other work given the individual's residual functional capacity, age, education and work experience?

(*Id*.)

These regulations place a very heavy burden on the claimant to demonstrate both a qualifying impairment or disability and an inability to perform past relevant work. *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir.1985)). If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Allen v. Bowen,* 816 F.2d 600, 601 (11th Cir. 1987). If the Commissioner carries this burden, claimant must prove that she cannot perform the work suggested by the Commissioner. *Doughty,* 245 F.3d at 1278 n.2; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

### PLAINTIFF'S MEDICAL HISTORY

Mr. Borgstrom's medical history is lengthy, but the court will note at the outset that this is an application only for disability insurance benefits. Mr. Borgstrom claims that his onset of disability was on October 2, 2006. The ALJ found, without objection, that Mr. Borgstrom last met the insurance requirements of the Act on December 31, 2006. Therefore, the issue before the court is whether Mr. Borgstrom was disabled during the narrow three month window between those two dates (the relevant period), and whether such disability lasted, or could be expected to last, for at least twelve months. Accordingly, although the following discussion will include a great deal of background medical information, the thrust of the court's analysis will be limited to the relevant period.

The record shows that Mr. Borgstrom suffered two heart attacks in 2001. Stents were placed and he apparently recovered well. His cardiologist, Rodney Powell, M.D., reported in March 2004 that Mr. Borgstrom was doing very well (tr. 249). He made the same observation later, on May 8, 2006, October 31, 2006 and

August 20, 2008 (tr. 243-245, 474). There is no other expert report concerning Mr. Borgstrom's cardiac condition.

From July 2004 through November 2007, Mr. Borgstrom's primary care physician was Ana Leurinda, M.D., a family practitioner. She saw Mr. Borgstrom on a fairly regular basis during that time for miscellaneous common illnesses and conditions. She also referred him to two physicians for psychological and physical examinations, as will be discussed later. Most noteworthy in Dr. Leurinda's records is her section concerning Review of Symptoms, subtitle Psychiatric, in which she noted "negative for anxiety, depression and sleep disturbances" on 13 different occasions over the three year period she treated Mr. Borgstrom (tr. 283-321, 447-450). Only once, on October 18, 2006 (which is within the relevant period) did she note that Mr. Borgstrom was "positive for anxiety and depression." (Tr. 294).

In August 2004, Mr. Borgstrom had surgery for a partially torn meniscus in his left knee from which he apparently fully recovered (tr. 220-221).

Mr. Borgstrom was treated by a psychiatrist, Victor DeMoya, M.D., as early as 2001. Mr. Borgstrom suffered from post-traumatic stress disorder because of abuse suffered during childhood with resulting anxiety and depression. Beginning in early January 2005, approximately two years before his claimed onset of disability, Dr. DeMoya noted what appears to be a quote from Mr. Borgstrom on each visit. Thus, on January 3, 2005, Dr. DeMoya recorded Mr. Borgstrom as saying "I'm doing pretty good" (tr. 271); on April 4, 2005, "I'm doing really well" (tr. 270); on July 6, 2005, "I'm great" (tr. 270); on October 4, 2005, "doing fine - some physical problems" (tr. 269); on January 3, 2006, "I've had the worst two weeks" (tr. 269); on April 3, 2006 "doing fine" (tr. 268); on July 28, 2006 "mentally okay, physically bad" (tr. 267); in September 2006 (a month before the onset date), "man, I've been through it" (tr. 267); on January 24, 2007(a month after his last date insured), "I give up" (tr. 266); on February 21, 2007, "hanging in there" (tr. 265); on October 17, 2007, "more problems" (tr. 470); on January 30, 2008, "I feel like crap all the time" (tr. 469); on

April 3, 2008, "I am great" (tr. 464); and on July 7, 2008, "it's been a bitch" (tr. 467). Although the diagnoses noted by Dr. DeMoya varied somewhat, his most common notations were post traumatic stress disorder (PTSD), panic disorder without agoraphobia, and major depressive disorder, recurrent or in full remission.[1]

On April 17, 2009, more then two years after the date last insured, Dr. DeMoya filled out a Mental Residual Functional Capacity questionnaire, in which he noted clinical findings of recurrent traumatic dreams, persistent elevation of arousal, hypervigilance, startle response, irritability, decreased frustration tolerance, spontaneous panic attacks, social avoidance, and decreased trust. Under prognosis he noted that "although improved, has reached maximum benefit and will not ever be able to be gainfully employed - will remain stable with maintenance medication, brief therapy and . . . ."[2] (Tr. 475). He further opined that Mr. Borgstrom was either unable to meet competitive standards or had no ability to function concerning understanding and remembering instructions, setting realistic goals or making plans and dealing with the stress of semi-skilled and skilled work. He also felt that Mr. Borgstrom had no useful ability to function appropriately with the general public, could not meet competitive standards in maintaining socially appropriate behavior, was seriously limited but not precluded from adhering to basic standards of neatness and cleanliness, and was limited but satisfactory in his ability to travel in an unfamiliar place or use public transportation. He felt that Mr. Borgstrom would be absent from work more than four days per month and that his condition had lasted for more than 12 months, that he was not a malingerer, that the impairments were reasonably consistent with the symptoms and functional limitations described in the evaluation, and that the impairments did not include alcohol or substance

---

[1]Dr. DeMoya used the DSM-IV diagnostic identifiers: 309.81 (PTSD); 300.01 (panic disorder without agoraphobia); 396.35 (major depressive disorder, recurrent); and, 396.36 (major depressive disorder, recurrent, in full remission).

[2]The handwritten notation ends abruptly here.

abuse. **Finally, it was Dr. DeMoya's opinion that the earliest date that the foregoing limitations occurred was on December 1, 2005 (tr. 475-479).**

As noted above, Mr. Borgstrom's primary care physician, Dr. Leurinda referred Mr. Borgstrom to two specialists. The first, Daniel Bader, M.D., a neurologist, examined Mr. Borgstrom on March 23, 2006. The chief complaint was rhabdomyolysis.[3] Mr. Borgstrom also gave a history of taking different medications, including Lipitor and TriCor which he was no longer taking, but said he still had pain. Physical examination was essentially normal. A nerve conduction/EMG study noted delayed conduction velocity across the right elbow, a fairly clear symptom of cubital tunnel syndrome. Dr. Bader's impression was (1) right ulnar neuropathy (cubital tunnel), (2) "? rhabdomyolysis" (3) coronary artery disease, (4) dyslipidemia[4], and (5) "? shoulder impingement syndrome." Dr. Bader recommended that Mr. Borgstrom talk to his orthopedic surgeon about the shoulder impingement and right elbow problems and that he see a rheumatologist. Finally, he noted that it could be possible to start Mr. Borgstrom back on Lipitor since he took that medicine for a long time without any symptoms but that he would have to be followed very closely regarding the possible recurrence of rhabdomyolysis (tr. 229-234).

On March 24, 2006, Mr. Borgstrom was seen by James Brown, M.D., a rheumatologist. Dr. Brown noted referral by Dr. Leurinda for evaluation of a six-month history of diffused painful aching involving the upper extremities. It appeared that Mr. Borgstrom had statin-induced rhabdomyolysis with temporary improvement following the discontinuation of Lipitor and TriCor. He had few symptoms in his legs and had "been able to participate in his hobby and job description, sometimes at high impact levels." On physical examination Mr. Borgstrom had full range of motion in his hands, wrists, elbows and shoulders, his strength was "excellent,"

---

[3]Disintegration of striated muscle fibers with excretion of myoglobin in the urine. *Dorland's Pocket Medical Dictionary, 27th Edition.*

[4]Abnormal lipids or lipoproteins in the blood. *Dorland's.*

cervical and lumbar spinal functional tests were normal, there was full range of motion to the hips, the knees showed some crepitus, all strength tests were 5/5 and there was some tenderness in the upper arm musculature. There was no evidence of atrophy or inflammation. Dr. Brown's clinical impression was status post arthroscopic management of bilateral knees, fracture repair of the left ankle, probable drug-induced rhabdomyolysis, and bilateral non-articular rheumatism in the rotator cuffs. He felt that Mr. Borgstrom could be treated with simple analgesics with avoidance of statins (tr. 235-236).

Mr. Borgstrom was also examined at the request of the Disability Determination Service by Dale Johns, M.D., a neurosurgeon, on November 28, 2006. He presented complaining of numbness in the fingers of his right hand and pain in his shoulder and elbow joints. He denied pain in the wrists, neck and legs. He had full range of motion in his neck. Dr. Johns noted prior imaging which disclosed some degenerative changes with mild encroachment at C3-4 and moderate central stenosis at C5-6 with a disc bulge at C3-4 and C6-7. Mr. Borgstrom gave a history of taking statins but then being taken off statins, presumably because of rhabdomyolysis. He reported weakness in his arms and some pain under his shoulder blades, worse at night, with episodes of low back pain, made worse by sitting in his truck or ATV. There was no numbness or motor weakness. He said on occasion he would walk the length of his 80 acre farm but had cramping in his calves and feet frequently. On physical examination the neck was normal without spasm, there was full range of motion in the shoulders but with pain on rotatory movements, marked tenderness over the bicep tendon on the right without swelling, and tenderness about the shoulders, more on the right than on the left. Testing was positive for tingling in his fingers on the left without swelling. Motor and sensory examinations were normal. Dr. Johns felt that there was no clinical evidence to support a diagnosis of cervical radiculopathy, that the present symptoms were likely the result of rhabdomyolysis, and that Mr. Borgstrom had ulnar neuropathy

secondary to compression syndrome of the right elbow with tingling in the left hand. Dr. Johns offered Mr. Borgstrom the possibility of going to some other institution for another opinion but Mr. Borgstrom said his problems were much better than they had been eight months prior.  Dr. Johns felt that those symptoms were most likely the after-effects of the rhabdomyolysis (tr. 260-263).

## DISCUSSION

Mr. Borgstrom argues that the ALJ erred in failing to give appropriate weight to the opinions of treating and consulting physicians, in improperly evaluating his subjective complaints of pain, and in improperly determining his residual functional capacity, and that he was disabled from his onset date.  The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained.  The issue thus presented is whether the ALJ's decision that Mr. Borgstrom was not disabled, in light of his physical and mental condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

1.    <u>Physician opinions.</u>

Mr. Borgstrom first contends that the ALJ erred in not fully crediting the opinion of Dr. DeMoya.  Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-1241 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Broughton v. Heckler*, 776 F.2d 960, 960-961 (11th Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986).  "Good cause" exists when:  (1) the treating physician's opinion was not bolstered by the evidence;  (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.  *Phillips,* 357 F.3d at 1241; see also *Lewis*, 125 F.3d at 1440 (citing cases).

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen,* 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical impairments at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. 404.1527(d).

The opinion of a non-examining physician is entitled to little weight, and, if contrary to the opinion of a treating physician, is not good cause for disregarding the opinion of the treating physician, whose opinion generally carries greater weight. *See* 20 CFR § 404.1527(d)(1); *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985); *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1255 (M.D.Fla. 2005). However, a brief and conclusory statement that is not supported by medical findings, even if made by a treating physician, is not persuasive evidence of disability. *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987); *Warncke v. Harris*, 619 F.2d 412, 417 (5th Cir. 1980).

"When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Phillips*, 352 F.3d at 1241. Failure to do so is reversible error. *Lewis*, 125 F.3d at 1440 (citing *MacGregor v. Bowen*, 786 F.2d 1050,

1053 (11th Cir. 1986));<sup>5</sup> *see also Nyberg v. Commissioner of Social Security*, 179 Fed.Appx. 589, 591 (11th Cir. 2006) (Table, text in WESTLAW)(also citing *MacGregor*).

The ALJ properly discounted Dr. Powell's opinion.  First, he noted that the doctor's opinion that Mr. Borgstrom would never be able to be gainfully employed was not a proper opinion.  A treating physician's opinion that a patient is "unable to work" or is "disabled" is not dispositive for purposes of Social Security claims.  The Commissioner's regulations and the interpretations of those regulations clearly provide that an ALJ should give weight to a physician's opinions concerning the nature and severity of a claimant's impairments, but that the ultimate question of whether there is disability or inability to work is reserved to the Commissioner.  For instance, Title 20 C.F.R. § 404.1527(e)(1) specifically states that a finding of disability or inability to work by a medical source does not mean that the Commissioner will automatically reach the same conclusion.  *See also* Title 20 C.F.R. § 416.927(e).  Furthermore, the Commissioner "will not give any special significance to the source" of an opinion on issues reserved for the Commissioner.  Title 20 C.F.R. § 404.1527(e)(3) and § 416.927(e)(3);  *see also* Social Security Ruling 96-5p (whether an individual is disabled is a question reserved to the Commissioner; treating source opinions on such questions are "never entitled to controlling weight or special significance").  Although such opinions on disability are not entitled to controlling weight, they must not be ignored, and the Commissioner must examine the entire record to determine whether such opinions are supported by the record.  SSR 96-5p.  In *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997) the court reversed the ALJ's finding of no disability, in part because the ALJ relied on a treating physician's report that the claimant could no longer work as a longshoreman when this report was ambiguous as to whether the claimant could do

---

<sup>5</sup>*MacGregor* further held that "Where the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true." 786 F.2d at 1053.

*any* work, and the physician subsequently wrote a letter saying the claimant was completely disabled.

To require the Commissioner to accept as controlling a statement that a patient is or is not disabled would require the Commissioner to credit the physician not only with knowledge of the patient's physical condition, but also with an understanding of the nuances of how the regulations analyze physical limitations with respect to job experience, age, education, transferability of skills, the definitions of the various levels of exertion relevant to types of work, and similar matters. Moreover, a physician's opinion on whether a person is able to work may be colored by such things as the physician's knowledge of local hiring practices, whether there are specific job vacancies, a person's reluctance to do a particular kind of work, and similar matters. These things are not properly considered by the Commissioner in determining disability. Title 20 C.F.R. §§ 404.1566, 416.966. For all these reasons, a physician's opinion that his or her patient cannot work or is disabled is not a conclusive medical opinion for the purpose of Social Security benefits determinations and by itself is not entitled to special significance.

Second, the ALJ found that Dr. DeMoya's opinion was not consistent with his own medical records. Dr. DeMoya stated that Mr. Borgstrom's disability began in December, 2005. However, the entry closest after that date had Mr. Borgstrom saying that he had suffered the worst two weeks, but attributing it to the flu and the illness of his wife's dog (tr. 269). Two months later Mr. Borgstrom said he was "doing fine" although he had some arm pain (tr. 268). In another three months he was "mentally OK, physically bad." (Tr. 267). Finally, in late September, 2006, and a week before his claimed onset date, Mr. Borgstrom said he had "been through it," because of five MRI's, spinal stenosis, rhabdomyolysis and pain in his elbow, shoulder and low back (tr. 267). However, Dr. DeMoya recorded his DSM-IV diagnosis that day as 296.36, major depressive disorder, recurrent, *in full remission* (*id*.). Mr. Borgstrom's next visit to Dr. DeMoya was on January 24, 2007, three weeks

after the date last insured. Mr. Borgstrom said he "g[a]ve up" due to his physical problems (tr. 266). This time the DSM-IV diagnosis was 296.30, major depressive disorder, recurrent, unspecified. Thus, Mr. Borgstrom clearly was having some physical problems that were depressing, but the record does not support a finding that he had been mentally disabled since December 2005.

The ALJ also noted that additional evidence concerning Mr. Borgstrom's mental state appeared in Dr. Leurinda's records. She saw him regularly from August 2004 through November 2007, and on each occasion save one she noted he was "negative for anxiety, depression and sleep disturbances." (Tr. 283-321, 447-450). The only exception was on October 18, 2006 (which was withing the relevant period) when she noted Mr. Borgstrom as being "positive for anxiety and depression." (Tr. 294). At each visit after that date, however, he was free of mental problems.

Dr. Powell, the cardiologist, saw Mr. Borgstrom infrequently after his 2002 stent placement, but on October 31, 2006 (withing the relevant period), Dr. Powell noted that Mr. Borgstrom was "feeling quite well[,]" that he admitted drinking too much beer and that "[a]lmost all of his muscle aches and pains are resolved." (Tr. 242). Dr. Powell attributed the muscle aches and pains to rhabdomyolysis caused by statin drugs, but noted that when the drugs were stopped the problem was resolved. (*Id*.)

Finally, it is true that the ALJ gave weight to the opinion of non-examining psychologists, but their opinions dealt with the relevant period and were consistent (tr. 415-19, 434-38). Such opinions are entitled to weight when other opinions have been discounted. 20 CFR § 404.1527(f).

Thus, while there was evidence before the ALJ to support Mr. Borgstrom's claim that he became emotionally disabled during the relevant period, there was also evidence supporting a finding that he did not. It was the ALJ's task to resolve the issue, and his decision was supported by substantial record evidence. Mr. Borgstrom has not shown error on this issue and he is not entitled to reversal.

## 2.    Subjective complaints of pain.

Mr. Borgstrom also contends that the ALJ erred in not crediting his subjective complaints of pain.  As this court is well aware, pain is treated by the Regulations as a symptom of disability.   Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms."  *Accord* 20 C.F.R. § 416.929. The Eleventh Circuit has articulated the three-part pain standard, sometimes referred to as the *Hand*[6] test, as follows:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Ogranaja v. Commissioner of Social Security*, 186 Fed.Appx. 848, 2006 WL 1526062, *3+ (11th Cir. 2006) (quoting *Wilson*) (Table, text in WESTLAW); *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1216 (11th Cir. 1991).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." *Wilson, supra*, 284 F.3d at 1226. Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

---

[6] *Hand v. Bowen*, 793 F.2d 275, 276 (11th Cir.1986) (the case originally adopting the three-part pain standard).

But "[w]hile both the Regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam*, 921 F.2d at 1215. The Eleventh Circuit has held that "pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)(citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)); *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1259 (M.D.Fla. 2005). However, the presence or absence of evidence to support symptoms of the severity claimed is a factor that can be considered. *Marbury*, 957 at 839-840; *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, if the Commissioner refuses to credit subjective testimony of the plaintiff concerning pain he must do so explicitly and give reasons for that decision. *MacGregor v. Bowen*, 786 F.2d at 1054. Where he fails to do so, the Eleventh Circuit has stated that it would hold as a matter of law that the testimony is accepted as true. *Holt v. Sullivan*, 921 F.2d at 1223; *MacGregor v. Bowen*, 786 F.2d at 1054. Although the Eleventh Circuit does not require an explicit finding as to a claimant's credibility, the implication must be obvious to the reviewing court. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole. *Dyer*, 395 F.3d at 1210 (11th Cir. 2005) (internal quotations and citations omitted). And of course, the reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence. *Wilson*, 284 F.3d at 1225-1226; *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991); *Hurley*, 385 F.Supp.2d at 1259.

Underlying the *Hand* standard is the need for a credibility determination concerning a plaintiff's complaints of pain. Those complaints are, after all, subjective. "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain." *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[7] People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others. "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain. This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ." *Hand, supra,* at 1548-49. It is within the ALJ's "realm of judging" to determine whether "the quantum of pain [a claimant] allege[s] [is] credible when considered in the light of other evidence." *Arnold v. Heckler*, 732 F.2d 881, 884 (11th Cir. 1984). Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that. The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief or the plaintiff's claims, is the basis for the ALJ's credibility determination.

Here the ALJ noted that Mr. Borgstrom had an active lifestyle - fishing, hunting, gardening, motorcycling and socializing. He also noted that the medical records showed essentially normal physical examinations in spite of positive MRI findings, and that during the roughly three month period in which Mr. Borgstrom had to show he was disabled, only Drs. Powell and Johns actually saw him. He told Dr.

---

[7] Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

Powell he was doing "quite well" (tr. 242-43), and Dr. Johns found very few signs that would support a finding of significant pain.

As noted above, Mr. Borgstrom had the burden of showing that he was disabled during the relevant period, and that his disability lasted or would be expected to last at least twelve months. The record supports a finding that no such disability had been proven, and Mr. Borgstrom is not entitled to reversal on this ground.

3.    <u>Residual Functional Capacity.</u>

Finally, Mr. Borgstrom contends that the ALJ erred in finding that he could not do his prior relevant work as a land developer, research director or loan analyst, which are light or sedentary skilled jobs, while finding that he could do light unskilled or semi-skilled jobs (tr. 20). However, all the parameters of Mr. Borgstrom's physical and mental limitations ultimately determined by the ALJ were posed to the vocational expert, and the testimony of that witness supported these findings. This is not surprising considering that the skilled jobs, even the sedentary ones, required mental effort that Mr. Borgstrom could no longer carry. Thus, without regard to whether the work was sedentary or light, he could do unskilled or semi-skilled work, but could not do skilled work. There was substantial record evidence to support this finding. Mr. Borgstrom is not entitled to reversal on this ground.

Accordingly, it is respectfully RECOMMENDED that the decision of the Commissioner be AFFIRMED, that this action be DISMISSED and that the clerk be directed to close the file.

At Pensacola, Florida this 28th day of September, 2010.

/s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

*Case No: 3:09cv510/LAC/MD*

**NOTICE TO THE PARTIES**

Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts,* 858 F.2d 698, 701 (11th Cir. 1988).